We'll hear argument next in the case of Anderson v. Raymond Corporation. Mr. Shooping. May it please the Court. My name is Trent Shooping. I represent the appellants, Mr. and Mrs. Anderson, in this case. It's a products liability case that went to trial, but only after the trial court had excluded the central opinion of the plaintiff's design expert. This case involves a stand-up forklift. As your Honors may remember from the briefing, there is a compartment for the operator to use that, in the design of the subject machine, did not provide anything to prevent the operator's left leg from coming out of the operator's compartment. As a result, Mrs. Anderson was allowed her body, she had some sort of event while she was operating the machine, she was allowed to come out of the machine and was essentially run over by the machine. The plaintiff's expert, Dr. Meyer, offered a few alternative designs, but the primary one was a door, which would have kept Mrs. Anderson from coming out of the compartment in the first place. The others were secondary. The others were things that would have protected Mrs. Anderson and other operators once she was already out of the compartment. So there was a material difference in the scope of these. And we see that from the beginning, the door was the central component of the plaintiff's case. It's perhaps a bit of a crude measure, but if your Honors look at the complaint and do a word search, we see that the word door is mentioned 37 times. The other two alternative designs that the court allowed to go to the jury were, involved a pedal and a wheel. The word pedal and wheel both appeared 13 times. Mr. Shooping, I'm kind of confused about the status and relevance of the so-called ANSI standards here. And in particular, can a vehicle, a fork truck, with a door comply with the 2005 standards, which requires the ability to egress quickly? It can, and Dr. Meyer considered that. And so I don't think it's a case where we would say that the ANSI standards could never be relevant. For example, had Dr. Meyer shown up at his deposition and said, oh, I didn't even realize there was an ANSI standard, or I knew it was out there, I didn't look at it. Dr. Meyer, in great detail, looked at that standard, and as a professional engineer, explained why that standard does not prohibit doors. Now, there's several ways. First, he looked at the wording and analyzed that as a professional engineer who understands how to look at such standards would do so. And so just as we, as attorneys and judges, have canons of constructions, have ways of interpreting legal text, he did the exact same thing and concluded that no, it does not prohibit a door. Now, when the district court based its exclusion upon its finding that ANSI somehow disapproved of a door, there were two errors in that. First, the court made a factual finding, which it's not allowed to do under Rule 702 analysis. Here, you had an expert who said, had done this analysis and said, I've looked at that standard. It does not in any way, shape, or form prohibit or discourage a door. I don't know that a judge cannot make any factual findings at the Daubert stage, such as does the plaintiff's expert or defense expert have the degrees he claims to have. Certainly. But I understand the point that ANSI is not controlling. And I think, you know, if there was an ANSI standard, for example, that said a widget shall be six inches long, and, you know, an expert came in and said, well, six inches means eight inches. That perhaps would be one thing. But what Dr. Meyer did is he looked at it and he explained, well, I know as a professional engineer, this is, one, the weight that the standard needs to receive, and two, it's not interpreted that way. And he did not only conduct his own examination of the standard, but he also explained how looking to how other engineers, other people in the field interpret that. We see that the Ford Motor Company uses doors on forklifts. We see that almost every major manufacturer of forklift offers a door in some form or another, which is another, it's indicative of the fact that other professional engineers do not interpret this standard to prohibit a door. Could I ask you, Mr. Shoeving, I understand there's a long-term siege going on between lawyers who represent people injured in forklift accidents and the industry itself. Has any jury verdict thus far adopted the door theory of defect? There's a case, it's the McEwen case, out of the Ninth Circuit, where the Ninth Circuit affirmed an award of punitive damages against a forklift manufacturer for not having a door. There may as well be others, and certainly I can expect we'll hear a little bit of perhaps scoreboard pointing from opposing counsel today. That's not relevant to a Rule 702 inquiry. Certainly, we're all aware that criminal defendants are convicted at an astronomical rate when they go to trial, certainly more so than the success, I think, of even those forklift manufacturers in these cases. That doesn't mean that those cases, each one doesn't deserve to go to a jury. Also, I think a central thing here where we can expect argument will be based on other experts. One of the central issues in this case is that the district court looked at other cases and said this opinion has been excluded before. Now, I have to point out this opinion has also been admitted before, but we know under Rule 702, we don't look to the opinion. We look to the methodology. To look at another case and say, well, a jury verdict was this or a jury verdict was that, we don't know who the lawyers were in that case. We don't know the underlying facts of the case. We don't know who the expert was, how their testimony was presented. We certainly, I think, can surmise that they may not have done the exhaustive work that every scrap of information about doors on forklifts. I believe I've reached the point that I've reserved for rebuttal, so if the Court doesn't have any further questions, I'll yield the podium. Thank you. Thank you, Counsel. Mr. Lococo. Thank you, Your Honor. May it please the Court. Good morning, Your Honors. My name is Frank Lococo, and I represent the Raymond Corporation. Your Honors, this is a run-of-the-mill pro forma appeal to try and overturn a district court's Daubert decision and obtain a new trial on a particular theory. That is the rear-guarding theory. I have just a few points to make, but I want to pick up with Judge Hamilton's question regarding other cases. I would note that that McEwen v. Crown case, Your Honor, is a 1999 case. It was, I believe, a state court case, but it was out in Oregon, and it was before the 2005 version of the standard, which adopted the language that you asked about in your questioning, and that language says that trucks like the 4250 involved in this case shall have an open compartment. So, are all of the Ford trucks in violation of the ANSI standard? No, Your Honor. I'm confused, frankly, by the way you've presented this. So, since everybody offers the option, lots of customers take the option. Can you explain the situation to me? Sure. So, the B56.1, 1969 standard is the one that OSHA adopted as federal law, and that standard says enclosures are not recommended. The standard then gets re-amended over the years. We get to the 2005, and since the 2005, it says you shall have an open compartment. There is another section of the standard that says . . . Shall be open. Okay. Shall be open, and it's shall. There is an earlier section of the standard that says more or less guarding may be provided in consultation with the manufacturer, which gets to the optional equipment that you're asking about, Judge Hamilton. Okay. And I think the record will show that Ford doesn't put on a latch door. The change that Dr. Meyer wants to assert here is a fundamental change. It's not, we can put on a door because it's easy to do, or because Ford uses it in its manufacturing plants. Why is that not an issue for the jury? Because . . . Talk about the methodology, not the conclusion. Sure. So, the methodology, if you look at what Dr. Meyer did, you can see this in the appellant's briefs. They say, he considered that, he considered that, he considered that, he read that, he considered that. Nowhere do they talk about him doing anything that sounds like engineering methodology. He testified . . . He has real-world . . . We often are frustrated by experts who present a lot of theories. But here you've got real-world comparisons. Thousands of employee hours, years, lots of accidents, presumably of both kinds of designs. Why isn't that a sufficient basis for reaching conclusions? Because in this circumstance, you have 60-plus years of design experience across thousands of engineers and across not just the industry. The ANSI standard is a balanced committee of users. It includes the UAW. It sounds like you're going back to the pre-Daubert generally accepted . . . No? I don't think I am, Your Honor. I think what I'm trying to do is explain what the district court was taking into account by looking at the lack of any methodology. This court in Kirk v. Clark Equipment a year and a half ago wrote that you don't have to have the best of testing, but was testing done one of the Daubert factors? Dr. Meyer on this issue did no testing. He didn't even put a door on a Raymond truck, the door he wants. He wouldn't say which door he wanted, but the door he wants, he didn't even put on a truck. Can I ask you something that's been bothering me? I would have thought you might have started your argument with this. The center point of your brief, quoted at least four times by my account, was the phrase that Dr. Meyer's methodology was, quote, not sufficiently exhaustive and thorough, close quote, from the district court's opinion on the Daubert issue. As plaintiff points out, that was the judge's paraphrase of your argument. I didn't see any indication in your brief that that's what that was. Well, on that point, in getting ready for the argument, I apologize for not being clear on that point. You made it. It's not a question of clarity. You said that's the finding of the district court, and that's why we should apply deferential review to the Daubert decision. You said it repeatedly. Well, I think it's more than that, though. He sets out the law. Do I wish the district court's decision had been more expansive? So you think this was a finding? Is that what you're saying? Yes, because of the language he uses after he says that. He says Raymond argues that this opinion is not embraced by the engineering community and Meyers' analysis and efforts in this case are not sufficiently exhaustive. And then the district court says, indeed, other courts have concluded that witnesses opining that a compartment door should be affixed to a stand-up counterbalance lift truck lack sufficient reliability and sufficient support by a scientific methodology to allow their presentment for a jury's consideration. And then he has this string site of cases involving this particular issue. So you're going to stand by the language in your brief as a finding of the district court. Is that right? I wouldn't. Yes, Your Honor, but I wouldn't write it that way now. I would write it the way I've just described it, which is he put it in as the praisee for then adopting it through the word indeed and then the rest of what he had to say. He didn't adopt anything following the word indeed. He said, indeed, other courts have said X. So the first proposition is one party's lawyer argues X. And he says, indeed, other courts have found X. Does he then say, I find X anywhere? Yeah. He then says, after the site, he then says, this court finds that John Meyer's opinion that Raymond was negligent or that its forklift is dangerously and defectively designed because it does not come standard with a compartment door, especially one that locks or latches, simply does not pass the Daubert test. So yes, I think he adopted it. Sounds like the bottom line rather than a particular reason. And as I said, Judge Easterbrook, I wish he had been more expansive. I have no idea why the district judge and the parties are talking about Daubert. It was replaced by an amendment to Rule 702 quite some time ago. Rule 702 is the governing doctrine. Daubert is dead. Well, has anybody noticed that Rule 702 and Daubert state different tests? I guess I'm unaware of Daubert being dead, Your Honor, as a practitioner. Mr. LoCocco, if your engineers are correct, I would expect that there would be a significant number of serious injuries to operators from tip-over and off-the-dock accidents among those companies that use doors. Is that a reasonable expectation? It would be if the doors that were being used by, for example, Ford Motor Company were being used in a way other than the way Ford uses them. It might be if the placement rate of these optional rear doors was more than 1% or 2% of the installed base. There isn't enough of a sufficient installed base to draw those conclusions, Your Honor. And the flip side of Dr. Meyer is that, and this is in the pretrial record, at least, that he talks about, there is significant testing with biomechanical, with anthropomorphic test dummies, with those dummies going off-docks, crash dummies, which lead to the conclusion that people that do that are going to end up either seriously dead or seriously injured. I take it crash dummies aren't in a position to jump off of a tipping forklift, are they? No. There are some problems with those little tests. It's the best we have, Your Honor. Okay, but Dr. Meyer looked at the available data. He considered it, whatever that means. Okay. I would just move to the other part of this analysis under the court's jurisprudence here. Even if the court determines that the district court didn't do the analysis thoroughly or properly, this court then does its own de novo analysis. On this record, I… Why? Why what? Why would we ever do this de novo? The Supreme Court says that our review is deferential. Presumably, if a district court's decision plunks deferential review, we remand. We don't do it ourselves. In Kirk v. Clark Equipment, if I could complete the answer, Your Honor. Please. I believe the Seventh Circuit, this circuit, says that it conducts its own de novo review rather than remanding. That just sounds like a mistake. It's not what the Supreme Court said in GE. It's okay. I believe Kirk is the most… We will see what we need to do about local precedent. All right. We would ask for the court to affirm the… Thank you, Mr. Lococo. Anything further, Mr. Schuping? Somewhere in Atlanta, Georgia, my law partner was standing up and yelling at his computer screen when Your Honor started talking about Rule 702 being the applicable test, not Daubert. What we see with counsel's argument, and with no disrespect, we saw an attorney arguing what a standard meant. In this case, we're applying Rule 702 to a professional engineer's interpretation, and we heard many arguments about the ultimate issue, many… Let me tell you my… I should have asked you this before. I'm worried about the holding in Dillon, this circuit's hold, where the same kind of testimony that's being offered here was excluded, and this court held that the exclusion was proper because the expert did not provide and then test an alternative design. It doesn't look to me like Mr. Meyer did either. There's a couple of issues. I think if the court reads Dillon closely, the language says there was no testing or any other exercise of professional skill, and what we see is there's many cases in this circuit's precedent, such as Ball, where it involved a ladder, and an expert did some mathematical calculations to predict how the ladder would perform, and this court specifically said that there was no need to do live testing with an exemplar. In the case Schultz v. Agzo… I'm asking you to talk about Dillon. I understand that you might prefer to talk about other cases, but I did ask you to talk about Dillon. Sure. To me, the important thing is that in Dillon, there was no circulation of the Dillon, and I believe that's Rule 40, if I'm not mistaken. All right. Let me read you the holding, what the panel calls its holding. When, as in this case, an expert is not engaged in any type of testing of his offered alternative design, it is not an abuse of discretion for the district court to refuse to allow such testimony. Well, Meyer didn't test an alternative design. The district court refused to allow his testimony. Why doesn't it follow from Dillon that that's not an abuse of discretion? Meyer explains why there's a lesser utility in Meyer building a door and doing what with it. I'm not sure. Look, Meyer might have explained why I disagree with Dillon, right? But Dillon is a legal holding, and an expert can't say, well, the Court of Appeals has said I should do X. I ain't doing that because I don't think that's the best thing. It doesn't really help. Well, respectfully, Your Honor, I do not believe that Dillon overruled the precedent in this circuit that specifically said you do not need to do live testing. If that were the case, it would completely gut Rule 702, and we know right now that not very far from here on Torrance Avenue, men and women at the Ford factory are operating stand-up forklifts with doors. To the extent Dillon stands for the proposition that prior circuit precedent was overruled and that now we must do live testing, then it simply is an error, and I would suggest that Dillon was not circulated to the whole court for an in-bank decision, which would have been proper if the court was going to change those prior explicit statements that we do not need to do live testing. And I would point out, in Schultz, it dealt with exposure to benzene, and the expert looked at studies that others have conducted with exposure to benzene. The court did not say, well, expert, you have to go out and expose people to benzene, and the same would apply here. If the court looks at Dillon, we see it's a completely different record than the one before the court in this case. Thank you. Thank you, Mr. Shooping. Case is taken under advisory.